**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ana Ramirez, | No. CV-22-01151-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Ana Ramirez ("Plaintiff") challenges the denial of her application for disability insurance benefits by the Social Security Administration ("Defendant") under Title II of the Social Security Act ("Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court has reviewed the briefs (Docs. 13, 16, 17) and the Administrative Record (Doc. 12, "A.R."), and now affirms the Administrative Law Judge's ("ALJ") decision.

## I.   BACKGROUND

Plaintiff filed a Title II application for disability insurance benefits on December 21, 2015, for a period of disability beginning on February 1, 2012. (A.R. at 302–03.) The Acting Commissioner of Social Security ("Commissioner") denied Plaintiff's application initially on June 13, 2016 (A.R. at 147–85), and upon reconsideration on November 29, 2016. (*Id.*) Thereafter, Plaintiff filed a request for a hearing, which was held on May 9, 2018. (A.R. at 121–45.) At the hearing, Plaintiff amended her alleged onset date of disability to September 1, 2015. (A.R. at 122.) The ALJ denied Plaintiff's application on

1   June 6, 2018. (A.R. at 15–25, 1843–53.) The Appeals Council denied Plaintiff's request
2   for review on September 12, 2018. (A.R. at 1–4, 1861–64.) Plaintiff appealed the decision
3   with the district court pursuant to 42 U.S.C. § 405(g), and on March 26, 2019, the court
4   remanded the case to the ALJ to issue a new decision. (A.R. 1878.) On March 16, 2020,
5   the ALJ again found Plaintiff was not disabled. (A.R. at 1776–91, 2349–64.) Plaintiff
6   sought judicial review of that decision, and in an order dated June 28, 2021, the district
7   court remanded the case to the ALJ for further proceedings. (A.R. at 2379–87.) Following
8   the third hearing before the ALJ, on March 23, 2022 (A.R. at 2303–45), and in a decision
9   dated June 22, 2022, the ALJ denied Plaintiff's application. (A.R. at 2261–87.[1]) Plaintiff
10  has timely sought judicial review with this Court pursuant to 42 U.S.C. § 405(g).

11      The Court has reviewed the medical evidence and administrative record and will
12  discuss the pertinent evidence in addressing the issues raised by the parties. Upon
13  reviewing the medical evidence and opinions, the ALJ evaluated Plaintiff's disability
14  application based on the following severe impairments: status post cervical anterior
15  discectomy and fusion, cervical spondylosis, cervical radiculopathy, lumbar degenerative
16  disc disease, remote history of ankle surgery, status post lower extremity deep venous
17  thrombosis, status post right basilica vein thrombophlebitis, obesity, factor V deficiency,
18  fibromyalgia, gastroesophageal reflux disease, and anxiety and depression disorders. (A.R.
19  2284–2285.)

20      The ALJ found that Plaintiff did not have an impairment or combination of
21  impairments that met or medically equaled the severity of one of the listed impairments
22  under 20 C.F.R. Part 404, Subpart P, Appendix 1. (A.R. at 2268–2269.) Next, the ALJ
23  determined Plaintiff's residual functional capacity ("RFC").[2] The ALJ found:

> After careful consideration of the entire record, the
> undersigned finds that the claimant had the residual functional
> capacity to perform light work as defined in 20 CFR [§]

---

[1] (Doc. 12-24 at 9-35 of the district court's electronic record).

[2] Residual functional capacity refers to the most a claimant can still do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

404.1567(b) and 416.967(b) except she could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, frequently balance, occasionally stoop, kneel, crouch and crawl. She should not have been exposed to hazards such as moving machinery and unprotected heights. The claimant was able to perform simple routine work involving simple work related decisions and simple instructions with few changes in the work setting.

(A.R. at 2272.) Based on this RFC, the ALJ found Plaintiff could not perform past relevant work but could perform other jobs existing in significant numbers in the national economy, such as office helper, electronics worker, and garment sorter. (A.R. at 2285–2286.) As a result, the ALJ concluded that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. (A.R. at 2287.[3])

## II.   LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart* 278 F.3d 947, 954 (9th. Cir. 2002) (citations omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. —, 139 S. Ct. 1148, 1157 (2019); *see also Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (noting substantial evidence "is an extremely deferential standard").

---

[3] (Doc. 12-24 at 35).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can adjust to perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If no adjustment can be made to other work, the claimant is disabled.

## III.   ANALYSIS

Plaintiff raises two claims of error on appeal.[4] Plaintiff argues the ALJ's decision to increase Ms. Ramirez's RFC from sedentary to light is not supported by substantial evidence because the ALJ (1) violated the law of the case doctrine by not adhering to the ALJ's prior RFC determination; and (2) did not properly evaluate medical opinions. (Doc. 17 at 1.) Plaintiff also argues, because the ALJ erred, this case should be remanded for a computation of benefits. (*Id.* at 2.) Each issue is addressed in turn.

---

[4] Plaintiff's opening brief raised whether the ALJ erred by "failing to cite substantial evidence to support her finding of a moderate limitation in concentration, persistence, and pace." (Doc. 13 at 1.) But, in Plaintiff's reply brief Plaintiff withdrew the argument, so the Court did not review that issue. (Doc. 17 at 1.) *See Lewis*, 236 F.3d at 517 n.13.

### A.    The Law of the Case Doctrine and the Rule of Mandate

Plaintiff argues that the law of the case doctrine should preclude the ALJ from revisiting the prior RFC determination absent any new, highly probative evidence. (Doc. 17 at 2). Defendant argues that the ALJ's less restrictive RFC determination should not be precluded by the law of the case doctrine. (*See* Doc. 16 at 11 n.6.)

The law of the case doctrine and the rule of mandate doctrine apply in the social security context. *Stacy v. Colvin*, 825 F.3d 563, 566 (9th Cir. 2016). The law of the case doctrine generally prohibits a court from reconsidering an issue that has already been decided by that same court or a higher court in the same case. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). This doctrine aims to promote the efficient operation of courts. *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990). The rule of mandate applies when a judge gives instructions on remand. *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The rule of mandate is "similar to, but broader than, the law of the case doctrine." *Id.* Upon receipt of instructions, a lower court "cannot vary [the instructions] or examine [the instructions] for any other purpose than execution.'" *Id.*; *see also Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1218–19 (C.D. Cal. 2005) (remanding to the ALJ with instructions to focus exclusively on step 5, but when the ALJ went back to step 4 and made a new RFC determination, the court reversed the ALJ's RFC determination reasoning "it was clear the remand was solely for purposes of permitting the ALJ to re-determine whether Plaintiff was disabled at step five"). But when the mandate does not explicitly preclude a lower court from reassessing a prior determination, revisiting it is "not necessarily prohibited." *See Cote*, 51 F.3d at 181–82.

Following Plaintiff's first hearing with the ALJ, the ALJ determined Plaintiff had a *light* RFC level. (A.R. at 19.) Plaintiff appealed, and per a stipulation by the parties, the district court granted the motion for stipulated remand, instructing the ALJ to "reevaluate the medical evidence[.]" (*Id.* at 1878.) Following Plaintiff's second hearing before the ALJ, the ALJ determined Plaintiff had a *sedentary* RFC level. (*Id.* at 1783.) Plaintiff appealed for the second time and the district court remanded again, in part because the ALJ "erred

in failing to appropriately evaluate the medical opinions of Plaintiff's treating providers and Plaintiff's symptom testimony." (*Id.* at 2387.) The district court's remand instructions acknowledged the new hearing before the ALJ would aid in confirming or amending Plaintiff's RFC level. (*Id.*) Following Plaintiff's third hearing before the ALJ, the ALJ determined Plaintiff had a *light* RFC level, and Plaintiff appealed to this Court. (*Id.* at 2272.)

Here, the district court previously twice reversed the ALJ to properly evaluate medical evidence on remand. In each instance, a new RFC determination was made. When a higher court instructs a lower court to revisit part of a step in the disability determination process, absent instructions to the contrary, the ALJ may consider other parts of that same step. *Stacy*, 825 F.3d at 568 (holding that "[b]y asking the ALJ to correct [claimant's] RFC, [the court] also impliedly instructed the ALJ to reconsider step 4 and determine whether someone with that corrected RFC could perform [claimant's] past work.") Here, like in *Stacy*, when the district court remanded due to a deficiency with one part of the step 4 analysis, the ALJ received an implied instruction to also determine this new analysis's effect on another part of step 4.

Plaintiff cites *Stacy* for the proposition that the ALJ can only change Plaintiff's RFC when there is "new, highly probative evidence." (Doc. 17 at 4.) In *Stacy*, however, two prior ALJs reviewed step 4 and found that Stacy could not perform his past work. *Stacy*, 825 F.3d at 566–67. The ALJ on remand discovered "new, highly probative testimony about [claimant's] ability to perform his past work and made a new finding supported by that testimony." *Id.* at 567. Thus, although "new, highly probative evidence" was sufficient in *Stacy* to make a new RFC determination, the Court of Appeals did not state that "new highly probative evidence" was necessary for the ALJ make a new determination. *Id.* at 568.[5]

---

[5]      More specifically, in *Stacy* the Court of Appeals stated,

The law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine is concerned primarily with efficiency, and should not be applied

Because Plaintiff's RFC level was not foreclosed by mandate, and an implied instruction to revisit Plaintiff's RFC level at step 4 existed, the ALJ did not violate the law of the case or rule of mandate by making a new step 4 finding. This new finding, however, must be supported by substantial evidence.

## B.   Medical Opinion Evidence

Plaintiff argues the ALJs light RFC determination is not supported by substantial evidence because "the ALJ erred in rejecting the opinions of Dr. Mehta, Carroll NP, and

---

when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust. *See Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991). …

Here, there were two prior step 4 findings by ALJs that Stacy could not perform his past work. Although these findings were never affirmed by the district court on review, this is typically the type of determination that should not be reconsidered under the law of the case doctrine.

But this is not the typical case. On remand, the second ALJ was surprised to hear new evidence that Stacy mostly performed supervisory tasks in his past job. This new testimony led a VE to conclude, for the first time, that Stacy could still perform the job of stationary engineer supervisor as that job is generally performed. **The ALJ properly considered this new, highly probative testimony** about Stacy's ability to perform his past work and made a new finding supported by that testimony. Given the new evidence on remand, the district court did not abuse its discretion in declining to apply the law of the case doctrine.

"The rule of mandate is similar to, but broader than, the law of the case doctrine." *United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995). The rule provides that any "district court that has received the mandate of an appellate court cannot vary or examine that mandate for any purpose other than executing it." *1 Hall*, 697 F.3d at 1067. The district court may, however, "decide anything not foreclosed by the mandate." *Id.*

*Stacy v. Colvin*, 825 F.3d 563, 567–68 (9th Cir. 2016) (emphasis added).

Applying *Stacy* in an unpublished disposition, the Court of Appeals stated: "Absent 'new, highly probative' evidence, '[t]he law of the case doctrine generally prohibits a court from considering an issue that has already been decided by that same court or a higher court in the same case.' *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016)." *Johnson v. Kijakazi*, No. 19-17359, 2022 WL 1553259, at *1 (9th Cir. May 17, 2022). The Court of Appeals application of *Stacy* in *Johnson* is binding on this Court in Ms. Johnson's case: *Johnson v. Commissioner*, CV 23-1524-PHX-JAT.

However, for purposes of this case, this Court need only apply the plain language of the published opinion in *Stacy*. In *Stacy*, the Court of Appeals held it was not error to consider new, highly probative evidence on remand. The Court of Appeals further held that when new, highly probative evidence causes the court to reconsider a prior finding, such reconsideration is also not error. This Court's reading of *Stacy*, however, does not include the broader proposition that an RFC (or other prior finding) can be changed <u>only</u> when there is new, highly probative evidence. As stated in *Merritt*, "substantially different" evidence is only one of three possible reasons that the law of the case doctrine might not apply. 932 F.2d at 1320.

Dr. Downs." (Doc. 17 at 3.)

While "[t]he ALJ must consider all medical opinion evidence" for claims filed before March 27, 2017, such as this one, the ALJ must consider those opinions within the hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who did not treat the claimant." *Id.* Treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *see also Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting medical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1.    Dr. Rajal Mehta

Since 2014, Plaintiff has seen Dr. Mehta, a primary care physician, for treatment of her impairments. (A.R. at 1483.) In August 2016, Dr. Mehta provided a medical opinion that Plaintiff's impairments would preclude her from performing sedentary work. (A.R. at 1483–1486.) Dr. Mehta estimated Plaintiff would miss more than five days of work per month due to her impairments. (*Id.* at 1485.) His assessment indicated that Plaintiff would

1    have to lie down or recline for three hours prior to sitting up, standing, or walking. (*Id.* at
2    1484.) Similarly, Dr. Mehta opined that Plaintiff's legs would need to be elevated forty-
3    five degrees for eighty percent of an eight-hour workday. (*Id.* at 1486.) Additionally, his
4    assessment indicated that Plaintiff experiences pain and stress severe enough to interfere
5    with the attention and concentration needed to perform simple work tasks for at least five
6    hours of an eight-hour workday. (*Id.* at 1483.) Dr. Mehta also indicated that Plaintiff would
7    need to take a break from work every hour to lay down, and that each break would be on
8    average between thirty to sixty minutes. (*Id.* at 1486.)

9        Dr. Mehta noted, however, that no cane or assistive device was necessary for
10   Plaintiff's occasional standing or walking. (*Id.*) Dr. Mehta notably did not find that because
11   of Plaintiff's impairments, Plaintiff would be "unable to obtain and retain work in a
12   competitive work environment, 8 hours per day, 5 days per week." (*Id.* at 1485.) This report
13   was based on Plaintiff's history and medical files, physical examinations, progress and
14   office notes, laboratory reports, and X-Rays, CT scans or MRIs. The report was not based
15   on any psychological evaluations. (*Id.* at 1485.)

16       The ALJ assigned "minimal weight to [Dr. Mehta's] opinion." (*Id.* at 2283.) The
17   ALJ found that Dr. Mehta's "treatment records do not corroborate [the] degree of
18   limitations alleged." (*Id.* at 2282.) The ALJ contends that during several prior visits to Dr.
19   Mehta, the examinations were normal, except for some limited range of motion, and
20   minimal work restrictions. (A.R. at 813–17, 2282.) The ALJ points out that during most
21   visits, there was a list of more than sixty impairments, but treatment from Dr. Mehta was
22   "restricted to one or two" consisting of conservative medication management, and
23   examinations showing minimal abnormalities. (A.R. at 759–65, 848–52, 2282.)
24   Additionally, the records show that Plaintiff helped take care of her grandchildren during
25   treatment. (*Id.* at 2282.) This, the ALJ reasoned, is inconsistent with Dr. Mehta's opinion
26   that Plaintiff would have to have her legs elevated eighty percent of the day, never to lift
27   more than five pounds, and to never reach. (*Id.*) Moreover, Dr. Mehta claimed that Plaintiff
28   needed to lie down more than three hours prior to standing, sitting, or walking again. (*Id.*

at 1484.) But Dr. Mehta also claimed Plaintiff would need to only take thirty to sixty minute breaks at work every hour. (*Id.* at 1486.) The ALJ reasoned that, because each break would include laying down, the two statements create an internal inconsistency. (*Id.* at 2282.) The ALJ reasoned this inherent inconsistency made Dr. Mehta's opinion less persuasive. (*Id.*) Lastly, the ALJ points to examination findings from Dr. Mehta that state Plaintiff had "full strength in her lower extremities, [] lack of muscle atrophy," a "normal physical exam," and "no neurological defects." (*Id.* at 2283.)

Plaintiff argues that the ALJ's reasons for discounting Dr. Mehta's opinion "failed to meet the standard of specific and legitimate." (A.R. at 2386.) Additionally, Plaintiff claims that because only a short paragraph was added to the end of the ALJ's discussion affording Dr. Mehta minimal weight, and the prior decision did not meet the standard of legitimate, this decision too does not meet the standard of legitimate. (Doc. 17 at 4.)

Here, the ALJ provided specific and legitimate reasons for discounting Dr. Mehta's opinion, so no error occurred. When a treating doctor's opinion is inconsistent or contradictory to their own notes, the ALJ does not err in affording less weight to the opinion. *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming the ALJ's rejection of a treating source opinion for being inconsistent with treatment notes); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict between a treating physician's opinion and her own notes is a reason to not rely on the opinion.").

As the ALJ explained, Dr. Mehta opined that Plaintiff needs: (1) to lie down for three hours prior to standing, sitting, or walking again; and (2) to take frequent work breaks—which include lying down—for a duration of thirty to sixty minutes on average. Both claims in Dr. Mehta's opinion cannot be true. Either Plaintiff only needs thirty to sixty minutes to lie down on breaks, or she needs three hours to lie down before walking, sitting, or standing again. Additionally, the few sentences added specific and legitimate reasons for why Dr. Mehta's testimony should be afforded less weight. The added reasoning points to Plaintiff's full strength in her lower extremities, lack of muscle atrophy, and normal physical exam results. (*Id.* at 2283.) Each bolsters the ALJ's position because

they contradict the conclusions Dr. Mehta drew. Full strength in lower extremities, lack of muscle atrophy, and a normal physical are contradictory to Dr. Mehta's conclusion that Plaintiff would need her legs elevated for at least eighty percent of the day. Thus, the ALJ's decision to afford Dr. Mehta's opinion minimal weight is supported by substantial evidence.

The ALJ additionally did not err in affording Dr. Mehta's letter dated July 2, 2018, minimal weight. Where a conclusory opinion regarding a claimant's disability lacks explanation, the ALJ does not err in rejecting that opinion. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996). Plaintiff argues that this letter was an "attempt to explain" his earlier opinion. (Doc. 13 at 15.) Defendant points out that the letter merely restates impairments already provided and simply claims Plaintiff has a "chronic disability." (A.R. at 2102.) Because the letter fails to explain Dr. Mehta's claim that Plaintiff has a "chronic disability," the ALJ did not err in affording minimal weight to Dr. Mehta's letter.

Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion to afford Dr. Mehta's opinion minimal weight because the ALJ supported this conclusion with specific and legitimate reasons.

### 2.    Nurse Practitioner Faith Carroll

Plaintiff first saw nurse practitioner Faith Carroll ("NP Carroll") in May of 2017 for mental health treatment. (A.R. at 1451.) In June of 2017, NP Carroll provided an opinion regarding the effect Plaintiff's mental health would have on her ability to work. (*Id.* at 1451–54.) In this opinion, NP Carroll stated that Plaintiff's anxiety and depression would preclude her from performing more than thirty percent of her work duties and Plaintiff would miss more than six workdays a month. (*Id.* at 1453.) Additionally, NP Carroll stated that Plaintiff would be at least eighty percent less effective than the average worker. (*Id.*) NP Carroll also noted that starting in May of 2017, she would "see [Plaintiff] monthly until stabilized on medications." (*Id.* at 1451.) NP Carroll concluded by stating Plaintiff "suffers from a very considerable amount of physical and psychological symptoms that significantly interfere with her ability to function." (*Id.* at 1454.)

NP Carroll did not base this decision on any physical examinations, other medical opinions, progress notes, laboratory tests, physical therapy reports, X-Rays, CT scans, or MRIs. The only basis for her opinion was a psychological evaluation. (*Id.*)

The ALJ assigned minimal weight to this opinion. The ALJ reasoned that NP Carroll, provided no explanation for the psychological evaluation she relied upon, so the ALJ had nothing to compare her opinion to as a point of reference. (*Id.* at 2281.) The ALJ further reasoned that NP Carroll was opining about Plaintiff's condition three years prior to their first meeting and had very limited contact with the Plaintiff prior to the June 2017 opinion. (*Id.*) Consequently, the ALJ reasoned NP Carroll must have been basing her opinion on Plaintiff's "subjective complaints of symptoms and limitations," which warranted giving less weight to NP Carroll's opinion. (*Id.* at 2281.) Lastly, the ALJ cited record evidence that Plaintiff's symptoms were stable on conservative dosages of medication. (*Id.* at 2282.) Thus, the ALJ concluded the symptoms were not as serious as alleged, and afforded NP Carroll's opinion minimal weight. (*Id.*)

Plaintiff argues that simply because NP Carroll has "no personal knowledge" of Plaintiff from 2014—the alleged onset of symptoms—until their meeting in 2017, this does not provide the ALJ a valid reason to reject the opinion. (Doc. 17 at 6.) Plaintiff acknowledges nurse practitioners are considered "other sources" as opposed to an "acceptable medical source." (Doc. 13 at 19.) Plaintiff, however, argues that to reject an "other sources" opinion, the ALJ is required to provide reasons that are "germane" to that source, which they failed to do. (*Id.*) Plaintiff alleges the ALJ did not provide the requisite findings, so they erred in affording NP Carroll's opinion minimal weight. (Doc. 17 at 6.) Plaintiff next argues that her depression and anxiety, although stable on medication, "caused severe symptoms," consequently fitting the required criteria to be considered a "severe impairment." (*Id.* at 5.) Plaintiff ultimately argues the ALJ erred in finding the symptoms were not as serious as alleged.

Nurse practitioners are not an acceptable medical source who can give medical opinions for claims filed prior to March 27, 2017. *Leon v. Berryhill*, 880 F.3d 1041, 1046

(9th Cir. 2017). Plaintiff filed her claim in 2015, so the ALJ correctly evaluated the opinion under the "other medical sources" standard. *See* 20 C.F.R. § 419.927(f). For the ALJ to reject the opinion from an "other source," they must give germane reasons for doing so. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). As the ALJ recognized, NP Carroll's opinion lacked explanations for her conclusions, involved minimal treatment of Plaintiff, and was based solely on Plaintiff's self-reported symptoms in her assessment. When an "other source," provides limited treatment for a claimant, fails to provide an explanation for their findings, and bases their opinion on the claimant's subjective complaints, the ALJ does not err in affording the opinion less weight. *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). In *Matney*, the ALJ concluded the opinion of an examining source was entitled to little weight "because he examined [claimant] only one time and produced a brief report. The diagnosis was based primarily upon the medical history and subjective complaints as related by [claimant]." *Id.* That court reasoned these were specific, legitimate reasons for affording the opinion minimal weight. *Id.*

Similarly, NP Carroll had very limited contact with Plaintiff prior to her opinion's issuance. To be exact, NP Carroll had only known Plaintiff for twenty-one days prior to completing the opinion in question. (A.R. at 2281.) According to NP Carroll's opinion, the two met monthly. (*Id.* at 1451.) This means at most, Plaintiff and NP Carroll had seen each other twice—May of 2017 and June of 2017—prior to NP Carroll's opinion dated June 9, 2017. Additionally, NP Carroll's opinion relied on "psychological evaluations." The only psychological evaluation Plaintiff relies on was NP Carroll's, which was completed the day they met, May 19, 2017. (Doc. 13 at 19.) The only source of information for this evaluation report was Plaintiff herself. (A.R. at 1653.) Consequently, the ALJ made a logical inference that NP Carroll must have been relying on Plaintiff's "subjective complaints of symptoms and limitations." (*Id.* at 2281.) Because NP Carroll reasonably appeared to be relying on Plaintiff's subjective complaints, and had limited interaction with Plaintiff, this was a germane reason to afford the opinion less weight.

In addition, the ALJ found inconsistency between NP Carroll's treatment and her

opinion. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) ("A conflict between a treating physician's opinion and her own notes is a reason to not rely on the opinion.") At their first meeting, NP Carroll said she would "see [Plaintiff] monthly until stabilized on medications." (A.R. at 2281.) Consequently, the ALJ considered evidence that Plaintiff "took Lorazepam only a few times a week for anxiety . . . [concluding,] the fact that [Plaintiff's] symptoms are managed with relatively low dosages of medication, suggests that the [Plaintiff's] symptoms were not as serious as she alleged." (A.R. at 2282.) This conservative dosage is inconsistent with NP Carroll's opinion that states Plaintiff "suffers from a very considerable amount of physical and psychological symptoms that significantly interfere with her ability to function." (*Id.* at 1454.) Absent an explanation from NP Carroll why this low treatment dosage was appropriate for Plaintiff's purported major health issues, the ALJ may reasonably conclude an inconsistency existed. (A.R. at 1454.) *See Thomas v. Barnhart* 278 F.3d 947, 954 (9th. Cir. 2002) (holding "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.") Thus, because the evaluation lends itself to the ALJ's interpretation that NP Carroll's evaluation and treatment conflicted with her opinion, there is no err.

The ALJ did not err in affording NP Carroll's opinion minimal weight because the ALJ gave germane reasons including Plaintiff and NP Carroll met a very limited number of times, NP Carroll's opinion was based primarily on Plaintiff's subjective complaints, and NP Carroll's psychological evaluation notes are inconsistent with her opinion. The Court finds substantial evidence supports the ALJ's conclusion in affording NP Carroll's opinion minimal weight.

### 3.    Dr. Mary Downs

Dr. Downs, a reviewing psychologist, completed a mental RFC assessment on May 26, 2016. (A.R. at 163.) Dr. Downs explained that Plaintiff could understand and remember simple instructions, perform within a schedule, ask questions or request assistance, and adapt to her work environment. (*Id.*)

Dr. Downs explained, however, that "[Plaintiff] would do better in jobs in which a coworker such as team leader or supervisor is present to provide occasional redirection." (*Id.*) Similarly, Dr. Downs stated "[Plaintiff] would do better in jobs with limited social interaction . . . [and those] with a predictable work environment." (*Id.*) Dr. Downs concluded based on her review, that Plaintiff was "able to meet the basic mental demands of competitive, remunerative, unskilled work with limited social interaction/predictable work environment on a sustained basis." (*Id.*)

The ALJ assigned "not significant weight" to the restrictions provided. (*Id.* at 2280–81.) The ALJ reasoned that, while Dr. Downs found Plaintiff would perform better in a work environment that had a team leader or supervisor and limited social interaction, "there was no express restriction to only these jobs." (*Id.* at 2280.) The ALJ further identified evidence that Plaintiff "lives with family members and has reported a good ability to get along with others." (*Id.* at 2280–81.) The ALJ reasoned that these findings support the conclusion that Plaintiff should not be strictly limited in her job search to positions that had limited social interaction and a supervisor. (*Id.*)

Plaintiff argues that Dr. Downs restricted Plaintiff's job search to those where "a supervisor [is] present to give occasional redirection." (Doc. 17 at 6.) Plaintiff contends that because of this restriction, it precludes competitive employment. (*Id.*)

The ALJ did not err in affording Dr. Downs suggested restrictions minimal weight. When a medical opinion provides a suggestion for the ideal employment setting, as opposed to the necessary minimum requirements for one's employment, the ALJ is not bound to only consider jobs that fit the ideal description. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 691 (9th Cir. 2009) (concluding the ALJ did not ignore mental RFC when the physician's mental RFC assessment "did not intend to limit [claimant] strictly to simple work"). Here, no clear reading of the suggested limitations exists. Dr. Downs did not make the suggestions a condition of her overall conclusion. To the contrary, in referring to the social interaction necessary for a potential job, Dr. Downs stated "[Plaintiff] would have difficulty but is *not precluded in ability* to complete other tasks in

this category." (A.R. at 163 (emphasis added).) As the ALJ noted, although Plaintiff may perform better in a work environment where she is supervised or has limited interaction, this was not an express requirement for her job search. (*Id.* at 2280–81.) Rather, these are suggestions for the environment Plaintiff would perform best in.

Because an employee may perform best in one job environment does not preclude the possibility that the employee could still perform adequately in a different job environment. Dr. Downs acknowledged this in her opinion by reasoning Plaintiff could complete other tasks that did not fit the more restrictive job description. (*Id.* at 163.) Similarly, record evidence supports the ALJ's conclusion. As the ALJ pointed out, Plaintiff lives with many family members, indicating the ability to get along with others. (*Id.* at 2280–81.) Therefore, although Dr. Downs provided a description of Plaintiff's ideal work environment—which included suggested limitations—she did not expressly require these limitations, and even said Plaintiff was not precluded in her ability to complete tasks that did not fit the ideal work environment. Because a rational interpretation of the record lends itself to the ALJ's conclusion to disregard Dr. Downs suggested limitations, her conclusion must be upheld. *See Thomas v. Barnhart* 278 F.3d 947, 954 (9th. Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

Because the ALJ based her decision on record evidence, and conclusions were reasonably drawn therefrom, this Court finds the ALJ provided specific and legitimate reasons to disregard Dr. Downs suggested limitations, and the ALJ's decision is supported by substantial evidence.

For the foregoing reasons, the Court finds that the ALJ's June 22, 2022 decision was supported by substantial evidence. Consequently, the Court need not address the computation of benefits issue. *Bakun v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01610-PHX-DJH, 2021 WL 586687, at *3 (D. Ariz. Dec. 10, 2021) ("The Court finds that the ALJ did not err in reaching his decision. Therefore, it is unnecessary to address whether this matter should be remanded for a computation of benefits.")

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** affirming the June 22, 2022 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration (A.R. at 2261–87).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 13th day of March, 2024.

James A. Teilborg
Senior United States District Judge